KELLEY v. STATE.

Opinion delivered March 18, 1912.

1. VENUE—SUFFICIENCY OF TRANSCRIPT.—Under Kirby's Dig., section 2326, requiring that the clerk of the county from which a criminal cause is transferred shall make out "a full transcript of the record and proceedings in the cause, including the order of removal, the petition therefor, if any, and the recognizance of the defendant and of all witnesses, and shall immediately transmit the same, duly certified under the seal of the court, to the clerk of the court to which the removal of the cause is ordered," *held* that the defendant can not complain because the original indictment and application for change of venue were transmitted, instead of certified copies. (Page 653.)

2. ELECTIONS—OFFENSES AGAINST PRIMARY ELECTION LAW.—Under the primary election law (Acts 1909, c. 165, section 4), the offenses of falsifying the returns of a primary election and of knowingly making a false count of the ballots cast are separate and distinct. (Page 654.)

3. INDICTMENT—MISNOMER OF OFFENSE.—It is immaterial that the indictment misnames the offense if the particular facts necessary to constitute the offense are specifically and accurately alleged. (Page 655.)

4. ELECTIONS—FALSIFYING RETURNS OF PRIMARY ELECTION.—Under Acts 1909, c. 165, section 4, providing that any judge or clerk who shall falsify the "returns" of a primary election shall be deemed guilty of a felony, etc., the returns consist of the poll books in which is entered the certificate of the officer conducting the election, together with a list of voters and one or more of the tally sheets, which are required to be carefully enveloped, sealed and delivered to the officer or board designated by the statute. (Page 655.)

5. SAME—INSTRUCTIONS.—Under an indictment for falsifying the returns of a primary election, it was error to instruct the jury to find defendant guilty if he substituted ballots cast thereat. (Page 656.)

Appeal from Prairie Circuit Court, Southern District; *Eugene Lankford*, Judge; reversed.

*Thomas & Lee, C. F. Greenlee* and *Manning & Emerson*, for appellant.

1. The court had no jurisdiction. The clerk failed to certify copies of the indictment, proceedings, order of removal, as required by statute. Kirby's Digest, § 2326; 38 Cyc. 938;

58 S. W. 686, 690; 7 Nev. 83-95; Black, Law Dict. 1183. (1 ed.);
15 Ark. 624; 33 *Id.* 815; 36 *Id.* 237; 38 *Id.* 221; 48 *Id.* 94, 105;
63 *Id.* 130; 72 *Id.* 613.

2. The indictment charges no offense. Acts 1909,
§ 4, p. 506.

3. There was a fatal variance in the proof and the in-
dictment. Defendant was charged with *"falsifying returns,"*
while the evidence only tends to show a false count of ballots.
15 Cyc. 376; 91 Ill. 525; 25 Minn. 106; 61 N. W. 322; 29 Minn.
351; 65 N. W. 800; 13 Ark. 62; 29 *Id.* 299; 34 *Id.* 160; 60 *Id.*
141; 61 *Id.* 115; 55 *Id.* 389; *Id.* 242.

4. In view of the authorities *supra,* the court's charge
was erroneous.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,*
Assistant, for appellee.

1. The omission of the clerk to certify copies of indict-
ment, motion for change of venue, order, etc., was an irregu-
larity merely, and was waived by failure to object before verdict.
It is not jurisdictional. Kirby's Dig., § 2326; *Wolf* v. *State,*
ms. op.; 73 Ark. 148; 35 *Id.* 118; Kirby's Dig., § 2427; 43 Ark.
233; 46 *Id.* 141; 77 *Id.* 428.

2. The indictment charges an offense under Acts 1909,
§ 4. This act makes it an offense *in any manner* to falsify
the returns of an election. The inconsistency between the
commencement and the descriptive part of an indictment is
immaterial. 34 Ark. 282; 36 *Id.* 246; 71 *Id.* 82; Joyce on
Ind. § 185; 60 Minn. 309. The "returns of an election"
consist of the certificate, tally sheets, poll books and *ballots.*
Kirby's Dig., § § 2832, 2833-4-5-6-7, etc.

3. There is no variance, and there is no error in the in-
structions. Cases *supra.*

WOOD, J. 1. Section 4 of act 165 of the Acts of 1909,
provides as follows: "Any judge or clerk, serving at any
such primary election, who shall in any manner falsify the
returns of the same, or knowingly make a false count of the
ballots cast, or aid or abet any such act of any other person.
or knowingly permit such to be done, shall be deemed guilty of
a felony, etc."

Appellant, who was a clerk at the primary election held
in Monroe County on January 15, 1910, was indicted under the

above section. The indictment charged him with the crime of "falsifying returns of election, committed as follows:" The indictment then sets out his official character, and recites that a primary election was called, etc.; then recites that appellant "did then and there unlawfully, wilfully, falsely, fraudulently and feloniously and knowingly falsify the returns of Brinkley Township in said election to the central committee, in that the said Tom Kelley did then and there falsely, fraudulently and knowingly take from W. L. Hinton, a candidate for· county treasurer of Monroe County at said primary election, 68 votes so cast for the said W. L. Hinton aforesaid, and credit the same to W. L. Graham, a rival candidate for treasurer aforesaid," etc.

The case was, upon change of venue, tried in the southern district of the Prairie County Circuit Court. The appellant, after a verdict of guilty was returned against him, moved an arrest of judgment, setting up that the court was without jurisdiction because there was not filed in the Prairie Circuit Court a certified copy of the indictment, nor of the motion for change of venue filed in the circuit court of Monroe County before the commencement of the trial, etc. And also alleging that the indictment used in the Prairie Circuit Court did not charge appellant with a public offense.

It appears that the clerk of the Monroe Circuit Court, after an application for change of venue had been filed and an order of the court made ordering the case transferred to the circuit court of Prairie County, Southern District, made a transcript of the record entries showing the orders of the court up to and including the granting of the change of venue, but, instead of making a transcript of the indictment and other papers, mailed the indictment and other papers filed in the case to the clerk of the Prairie Circuit Court, and attached to his transcript of the record entries a certificate to the effect that the foregoing contained a true copy of the record, and then further certified as follows: "I further certify that the original indictment, the demurrer, the motion for a continuance and the motion for change of venue are also transmitted with this cause."

After change of venue is ordered in criminal cases, the statute requires that "the clerk of the county in which the same is pending shall make out a full transcript of the record and proceedings in the cause, including the order of removal, the peti-

tion therefor, if any, and the recognizance of the defendant, and of all witnesses, and shall immediately transmit the same, duly certified under the seal of the court, to the clerk of the court to which the removal of the cause is ordered.'' Kirby's Digest, § 2326.

The appellant contends that the failure of the clerk of the Monroe Circuit Court to certify copies of the indictment and application for change of venue was not a compliance with the above statute, and that therefore the Prairie Circuit Court had no jurisdiction.

The purpose of the statute was to enable the court in the county to which the venue, was changed to have before it as a part of the record the contents of the indictment, so that the court and jury before whom the cause was to be tried should be informed of the nature of the charge against the accused. It was absolutely necessary, to give the court jurisdiction, that there should be a copy of the indictment that was returned by the grand jury in the county where the cause originated. There could not be a trial without a copy of the indictment or the original indictment itself. While the statute does not contemplate that the original indictment shall be sent to the county to which the change of venue is ordered, nevertheless where this is done, under the certificate of the clerk showing that it was the original indictment, it is sufficient to give the court to which the case is sent jurisdiction. A copy of the indictment could not advise the court any more accurately of the charge than the original indictment. The irregularity in the transmission of the original, duly certified to, instead of a copy, as the statute directs, works no prejudice to the right of the accused to have the court and jury before whom he is tried notified of the charge made against him, and to be fully advised himself of such charge.

Under our statutes and decisions a case will not be reversed where the defects and irregularities in the proceedings are merely formal, and do not result in prejudice to the accused. The defect in the record complained of here was not substantial, and could not possibly have resulted in any prejudice to appellant. Kirby's Digest, § 2605; *Lee* v. *State*, 73 Ark. 148, and cases there cited.

2. Under the statute it is an offense to falsify the returns

of a primary election, and also an offense to knowingly make a false count of the ballots cast. These are separate and distinct offenses. The indictment names the offense, "falsifying election returns," but in setting forth the particulars constituting the offense it shows that the real offense charged is that of a "false count of the ballots."

A discrepancy or mistake in the naming of an offense in an indictment will not vitiate the same if the particular facts necessary to constitute the offense are specifically and accurately described. "The name of the crime is controlled by the specific acts charged, and an erroneous name o˙ the charge does not vitiate the indictment," *State* v. *Culbreath*, 71 Ark. 80; *Johnson* v. *State*, 36 Ark. 242; *Lacefield* v. *State*, 34 Ark. 282; *Harrington* v. *State*, 77 Ark. 480. The indictment is valid as a charge against appellant for making a false count of the ballots cast.

3. There was evidence tending to show that at a primary election in Monroe County, held in January, 1910, a number of votes which were cast for W. L. Hinton for county treasurer were counted for his opponent, W. L. Graham. A number of witnesses testified that at such election they had voted for Hinton. When the ballots bearing the numbers opposite their respective names were examined, they appeared to have been cast for Graham, an opponent of Hinton for the nomination to the office of county treasurer. One of the witnesses introduced by the State testified that he was on a table in the dining room of the hotel and looked under the transom that was raised by having a 38-calibre cartridge placed under it. He was looking through that small crack; could partly see in the room where the election was being held. When a party voted, he would hand his vote to Mr. Hawkins (who was one of the judges of election); he would open the ticket, and it seemed that some of the tickets were acceptable and all right. The ballot box was in front of him on the table. "Mr. Hawkins would put them in, and would reach over in front of Mr. Kelley and take a substitute, and put the original in his pocket and reach over and get one in front of Mr. Kelley and call out the number and put it in the box. I never saw any one hand in the tickets that were in front of Kelley. Hawkins burned the tickets something like every twenty minutes. I saw him burn them twice.

Kelley was three or four feet from Hawkins. Kelley was an arm's length from the tickets on the table. I saw him scribble on them. From where I was, I could not tell what he was doing. He would lay them in a pile. Hawkins might not have put the ballots that were voted in the fire; it might have been ballots that folks had attempted to vote, and that he mutilated or destroyed in some way; but he put something in his pocket and took something out of his pocket and burned it; burned the same kind of paper that the ballots were. Could not see the names of the persons on the paper."

Among other instructions, the court gave, over the objection of appellant, the following:

"1.  You are instructed that if you find from the evidence that the defendant substituted ballots cast at the election held January 15, 1910, in Brinkley Township, Monroe County, Arkansas, and that said substitution resulted in taking votes from W. L. Hinton and giving the same to Wallace Graham, or that he knowingly permitted others to so change or substitute ballots in this manner, or consented or connived at such changing of such ballots, you will find the defendant guilty."

"3.  You are instructed that knowingly making false returns of any primary election to the central committee of any political party which has ordered the holding of such primary is a felony; and if you find from the evidence that the defendant knowingly made false returns to the central committee of the election held January 15, 1910, by substituting other ballots than the ballots cast by the voters to conceal such false returns, you will find the defendant guilty."

"5.  You are instructed that if you find from the evidence that W. L. Hinton was a candidate for treasurer of Monroe County, Arkansas, on the 15th day of January, 1910, at a primary election called and held by the Democratic party of that county to nominate candidates for county treasurer, and that at said primary election he received more than twenty-four votes; and that the defendant, knowing this fact, knowingly and fraudulently certified to the central committee that he, the said Hinton, received only twenty-four votes, then you will find him guilty in this case."

The statute under which the appellant was indicted does not define "election returns." Indeed, the statute is very de-

fective and uncertain in this particular.    But under our general election law, which the Legislature doubtless had in mind, an idea by analogy of what is meant by "election returns" is obtained from section 2832 of that law, which is as follows:

"After the examination of the ballots shall be completed the number of votes cast for each person shall be enumerated under the inspection of the judges, who shall prepare and sign in duplicate a certificate showing the number of votes given for each person and the office for which such votes were given, which certificates shall be attested by the clerks.    And, after making such certificate, the judges before they disperse shall put under cover one of said tally sheets, certificates and poll books and seal the same, and direct it to the board of county election commissioners."

The meaning of "returns" is defined in 15 Cyc., p. 376, as follows:

"Returns consist of the poll books in which is entered the certificate of the officer conducting the election, together with a list of voters, and one or more of the tally sheets, all of which are to be carefully enveloped, sealed and delivered to the officer or board designated by statute."    See also *State* v. *McFadden*, 65 N. W. 800-2; *People* v. *Ruyle*, 91 Ill. 525-528, and other authorities cited in appellant's brief.

From the above it will be seen that the offense which the proof tends to show that the appellant committed, if he committed any offense, was not that of "falsifying the returns" of an election.    The court erred, therefore, in submitting the question to the jury upon that theory.    As above stated, if appellant is guilty of any offense at all, under the charge and under the proof it was the offense of making a false count, and "not of falsifying returns."    Appellant was indicted for "falsely," etc., taking votes cast for Hinton and crediting same to Graham.    There is no charge that appellant "knowingly permitted others" to "change" or "substitute" ballots. Instruction No. 1 was therefore erroneous and prejudicial because it submitted an issue that was not alleged.    Nothing should be assumed, and nothing can be taken by intendment in a criminal charge of this kind.    The appellant was entitled to a trial upon the charge as laid against him.

The court therefore erred in its instructions to the jury, and for this error the judgment must be reversed, and the cause remanded for a new trial.

KIRBY, J., dissents.