## STATE v. DOUGHTY.

### Opinion delivered June 3, 1918.

1. ELECTIONS—OFFENSES AGAINST ELECTION LAW.—Under Kirby's Digest, § 2825, the offenses of wilfully making a false count of any election ballot, and falsely or fraudulently certifying the returns of any election, are separate offenses.

2. ELECTIONS—FALSE COUNT—INDICTMENT.—A count in an indictment framed under Kirby's Digest, § 2825, *held* to charge only the offense of making a false count at an election.

3. ELECTIONS—FALSE COUNT — ALLEGATIONS OF INDICTMENT.—In charging election judges with a false count of the ballot, it is necessary only in the indictment to charge that a certain number of ballots were miscounted, and it is not necessary to set out the names of those persons whose ballots were miscounted.

4. ELECTIONS—FALSE COUNT—VOTES AND BALLOTS.—Kirby's Digest, § 2825, makes it unlawful for election officers to make a false count of the result of the election in a particular precinct; it does not undertake to deal with the different methods by which the incorrect result may be wrongfully accomplished. There is no distinction under the statute between a miscount of votes and a miscount of ballots themselves; in the statute, the words are interchangeable.

5. ELECTIONS—FRAUD—FALSE COUNT—INDICTMENT.—Under Kirby's Digest, § 2825, it is sufficient in an indictment to follow the language of the statute, and it is unnecessary to set forth the particular manner in which the wrongful result, as declared in the false certificate, was brought about, whether by a false count and certificate of the ballot or whether by a correct count and a false certificate as to the result attained by the count.

6. ELECTION—FALSE COUNT—FALSE CERTIFICATE.—Under Kirby's Digest, § 2825, the returns constitute the certificate of the result of the election, and the form of the charge in an indictment thereunder is sufficient when it is alleged generally that the election

officers made a false certificate by certifying the votes received by one candidate to be more than that candidate actually received, or that the votes received by another candidate were less than he actually received.

7.  ELECTIONS—FALSE COUNT.—Under Kirby's Digest, § 2825, where election judges are charged with making a false return of the election, it is not necessary for the indictment to allege that the false certificate was delivered to the election commissioners; such delivery is not necessary; the offense is complete when a false certificate is made out and signèd.

Appeal from Perry Circuit Court; *Guy Fulk,* Judge; reversed.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellant.

The indictment is direct and certain and states a public offense. Kirby's Digest, § 2825. It was a crime to make a false count and also to falsely certify the returns. 102 Ark. 651; Kirby's Dig. § 2228, etc. The indictment fully meets the requirements of the statute. 88 Ark. 311; 49 *Id.* 499. It is not open to the charge of duplicity; if more than one offense was alleged specific objection should be made and if not it is waived. 77 Ark. 418; 32 *Id.* 203. As to the sufficiency of the indictment see also 55 Ark. 360; 19 *Id.* 613; 73 *Id.* 487; 84 *Id.* 487; 99 *Id.* 434.

*Sellers & Sellers,* for appellee.

1. . The indictment is not certain and direct as to the offense or circumstances. It can not be ascertained whether it was intended to charge defendants as principals or accessories, for they are charged as being both and the joinder is improper. 37 Ark. 274; 119 *Id.* 219.

2. The circumstances of the offense are not set out. Kirby's Dig., § 2827, *et seq.* The indictment should show the manner of making the false count. The statute condemns a false count of ballots and not a false taking of votes from one candidate and giving them to another. It is not alleged that the ballots were falsely counted, or that the votes were falsely counted. There is no allegation of the names of the voters whose votes were falsely counted. That portion which alleges the aiding and abetting is fatally defective. 90 S. W. 581; 110 Am. St. 84;

58 Ark. 390; 102 *Id.* 594.   The indictment states a mere conclusion of law.   23 S. W. 129.

McCULLOCH, C. J.   The State's appeal in three cases will be discussed in this opinion.

The circuit court sustained demurrers to indictments charging violations of the election laws.   In the case against Doughty, Glasco and Crist, who were the election judges of Perry Township, in Perry County, the indictment contains two counts, the first charging the offense of making a false count of the election ballots, and the second count charging the accused with falsely certifying the returns of the election.   The first count, after setting forth the fact that the defendants were "appointed, sworn, qualified and acting judges" at the township mentioned to hold the election on the 7th day of November, 1916, charged that the defendants "did then and there unlawfully, wilfully, fraudulently, knowingly, falsely and feloniously make a false and fraudulent count of the ballots cast at said election aforesaid, in that the said defendants, J. F. Doughty, W. E. Glasco and E. L. Crist, unlawfully, wilfully, fraudulently, falsely, knowingly and feloniously did take from one N. C. Harris, a candidate for sheriff of Perry County, Arkansas, at said general election aforesaid and did unlawfully, wilfully, fraudulently, falsely, knowingly and feloniously did aid, abet and permit the taking of seventeen votes so cast in said township aforesaid for the said N. C. Harris, for sheriff of Perry County, Arkansas, aforesaid, and did then and there unlawfully, wilfully, fraudulently, falsely, knowingly and feloniously count the same for, and aid and abet and permit the same to be counted for and credited to, one John Q. Allen, a rival candidate for sheriff of Perry County, Arkansas, aforesaid, against the peace and dignity of the State of Arkansas."

The second count, after setting forth the official capacity of the accused as election officers, reads as follows:

"The said defendants aforesaid did then and there unlawfully, wilfully, fraudulently, falsely, knowingly and feloniously certify the returns of Perry Township, Perry County, Arkansas to the Board of Election Commissioners of Perry County, Arkansas, which said Board of Election Commissioners was lawfully and duly appointed, sworn, qualified and acting, in that the said defendants, J. F. Doughty, W. E. Glasco and E. L. Crist, did then and there make a certificate to said Board of Election Commissioners, certifying that N. C. Harris, who was then and there a candidate for sheriff of Perry County, Arkansas, at said general election aforesaid, had received a less number of votes than in truth and in fact had been cast in said township for the said N. C. Harris as candidate for sheriff of Perry County, Arkansas, at said general election and that John Q. Allen, a rival candidate for sheriff of Perry County, Arkansas, at said general election had received a greater number of votes than in truth and fact had been cast for him, the said John Q. Allen, in said Perry township, Perry County, Arkansas, in said general election, as follows, towit: That the said defendants unlawfully, wilfully, fraudulently, falsely, knowingly and feloniously did falsely certify to the said County Board of Election Commissioners of Perry County, Arkansas, that the said N. C. Harris had received as candidate for sheriff of said Perry County, Arkansas, seventy-nine votes in said Perry township, Perry County, Arkansas, aforesaid, when in truth and in fact the said N. C. Harris had received ninety-six votes in said township aforesaid for sheriff of Perry County, Arkansas, and the said defendants unlawfully, wilfully, fraudulently, falsely, knowingly and feloniously did falsely certify that John Q. Allen, a rival candidate for sheriff of Perry County aforesaid, had received 326 votes in said Perry township, Perry County, when in truth and in fact the said John Q. Allen had received 292 votes in said township aforesaid, and the said certificate so made by the said defendants, J. F. Doughty, W. E. Glasco and E. L. Crist to the said Board of Election Com-

missioners of Perry County, Arkansas, which said board was then duly appointed, sworn and qualified and acting in form and according to law, was then and there unlawfully, wilfully, fraudulently and knowingly false and fraudulent, against the peace and dignity of the State of Arkansas.''

In one of the cases against Woolf, Powell and Lemaster, who were election judges in Houston Township, Perry County, the charge in the indictment is that of making a false count of the ballots, and the indictment follows precisely the form used in the first count of the Doughty case, and in the other case against Woolf, Powell and Lemaster they are charged with falsely certifying the returns of the election, and the form used is the same as that in the second count in the Doughty case.

(1) The indictments were framed under section 2825 of Kirby's Digest, which reads as follows:

''Any election officer or other person whomsoever who shall wilfully make a false count of any election ballots, or falsely or fraudulently certify the returns of any election, or steal, destroy, secrete or otherwise make way with any election ballot, tally-sheet, certificate or ballot-box, either before or after the closing of the polls, shall be deemed guilty of a felony, and, on conviction thereof, punished by imprisonment at hard labor in the penitentiary not less than two years nor more than seven years.''

In the case of *Kelley* v. *State,* 102 Ark. 651, we decided that a similar statute providing for penalties against election officers under the primary election law created two separate offenses, one for making a false count of the ballots and one for falsely certifying the election returns. There is no material difference in the statutes so far as concerns these two offenses, for each of them make it an offense for any election officer to ''make a false count of any election ballot or to fraudulently certify the returns of any election.'' In the *Kelley* case we said: ''Under the statute it is an offense to falsify the returns of a primary election, and also an offense to knowingly make a false count of the ballots cast.

These are separate and distinct offenses. The indictment names the offense 'falsifying election returns,' but in setting forth the particulars constituting the offense it shows that the real offense charged is that of a ·'false count of the ballots.' '' ·

It may be that the offense of making a false count of the ballots merges into the offense of falsely certifying the returns so that there could not be a conviction of both offenses, and that where the elements of both offenses are present the State will have to elect which offense she will base the prosecution upon. But that question is not presented here for the reason that there was no effort below to require the State to make an election. Instances are conceivable where one of those offenses might be committed by an election officer without the unlawful acts being sufficient to complete the other offense. For instance, there might be an actual false count of the ballots so as to make out that offense completely without the returns themselves being certified, and, on the other hand, there might be a false certificate of the returns without the ballots themselves having actually been miscounted.

Without undertaking to discuss further the reasons upon which the decision is based, we find it sufficient to say that the *Kelley* case, *supra,* is decisive in the construction of the statute under which these indictments were framed.

(2) Learned counsel for defendants contend that the first count of the indictment is bad because it improperly charges two offenses, viz: that of making a false count, and of aiding and abetting another in making a false count. We think this objection to the indictment is unfounded for the reason that the use of the words ''aid, abet and permit'' should be treated as surplusage, because the indictment in plain terms charges the defendants with having made the false count themselves, and, therefore, they could have only aided and abetted each other in the commission of the act of making the false count. It is not alleged in the indictment that defend-

ants aided, abetted or permitted some other person to make the false count, but the charge is that they "did take from one N. C. Harris, a candidate for sheriff of Perry County, Arkansas, at said general election afore-said   *   *   *   seventeen votes so cast in said township aforesaid for the said N. C. Harris for sheriff of Perry County, Arkansas, aforesaid, and did then and there unlawfully, wilfully. fraudulently, falsely, knowingly and feloniously count the same for   *   *   *   and credited to one John Q. Allen, etc."

The indictment, therefore, sets out only the facts which constitute the offense of making a false count, and the other words must be treated as surplusage.

(3) Again it is urged that the indictment is insufficient because it is indefinite in that it fails to set out the particular manner in which the false count of the ballots was made, and in not setting out the names of the particular voters whose ballots were miscounted. Ordinarily it is sufficient that a charge of a statutory offense be made in the language of the statute which created the offense, an exception to that rule being that where a statement of particular facts is necessary to put the accused on notice of the charge he is called to meet, the indictment must set forth such additional facts. The exception does not apply, however, in this case, for it would be impossible for the grand jury to ascertain the particular ballots that were miscounted, and it is sufficient to charge in the indictment the substance of the miscount of the ballots, that is to say that a certain number of ballots were miscounted.

(4) It is urged, too, that the indictment ought to have specified whether the ballots themselves were miscounted or whether there was merely a miscount of the number of votes, but we think there is no distinction under the statute between a miscount of votes and a miscount of ballots themselves. In fact, the words "vote" and "ballot" are to be treated as interchangeable within the meaning of the statute, for a miscount of the votes at an election constitutes a miscount of the ballots them-

selves. What the statute really means is that it shall be unlawful for the election officers to make a false count of the result of the election in that particular precinct, and this statute does not undertake to deal with the different methods by which the incorrect result may be wrongfully accomplished. It only imposes a penalty on the election officers for intentionally reaching that result.

The first count of the indictment follows substantially the language of the indictment in the *Kelley* case, *supra,* and we held in that case that the indictment was sufficient to constitute a charge of making a false count.

(5-6) The second count in the indictment is assailed on the ground that it is defective in that it merely states a conclusion without stating facts upon which it is based, and that it fails to state whether the certificate made by the judges was false in not corresponding with the tally-sheets and ballots, or false in not reflecting the correct result according to the ballots as actually cast. It was sufficient, as before stated, to follow the language of the statute, and it is unnecessary to set forth the particular manner in which the wrongful result as declared in the false certificate was brought about, whether by a false count and certificate of the ballot or whether by a correct count and a false certificate as to the result ascertained by the count. The statute prescribing the method of certifying the result of an election provides that after the count of the ballots has been completed and the vote cast by each person properly enumerated the judges shall "sign in duplicate a certificate showing the number of votes given for each person, and the office for which such votes were given," and that after making the certificate the judges "shall put under cover one of said tally-sheets, certificates and poll-books and seal the same, and direct it to the board of county election commissioners." In the *Kelley* case, *supra,* we defined the meaning of the word "returns" in the election statute to consist of "the poll-books in which is entered the certificate of the officer conducting the election, together with a list of voters, and one or more of the tally-sheets." The returns, therefore,

constitute the certificate of the result of the election and the form of the charge in the indictment is sufficient when it is alleged generally that the election officers made a false certificate by certifying the votes received by one candidate to be more than that candidate actually received, or that the votes received by another candidate are less than he actually received. The second count of the indictment is sufficient, for it charges the falsity of the certificate to be in giving one of the candidates less than the number of votes that he actually received and giving another more votes than he actually received.

(7) Again it is said this count is defective because it does not allege that the false certificate was delivered to the election commissioners. A delivery to the election commissioners is not essential to the completion of the offense, for the statute makes the offense complete when a false certificate is made out and signed, for then the work of the election officers is complete, except to select one of their number to make delivery of the returns to the election commissioners.

We are of the opinion that each of the counts in the indictments states an offense under the statute, and that the demurrer in each of the cases was improperly sustained. The judgment in each case is, therefore, reversed and the cause remanded with directions to overrule the demurrer.

HART, J., not participating.