EMANUEL SCHLOSS ET AL. V. SELIG SOLOMON ET AL.

[Three cases.]

*Husband and wife—Agency—Payments—Application.*

1. Where, in a chancery case, a statement and discussion of the facts will be of no benefit as a guide in future cases, it is unnecessary thus to amplify the record.

2. Where in a suit involving the validity of a chattel mortgage executed by a wife pursuant to negotiations by her husband as her agent, as claimed by the mortgagees, it appears that at the time of the execution of the mortgage she was acting for herself, and had full information, what her husband had previously done becomes immaterial, and the question of his agency is of no consequence.

3. Under the facts in these cases, the complainants had the right to apply the money received on the foreclosure of their chattel mortgage, first, in payment of the debts alone secured by the chattel mortgage, and, second, upon debts otherwise secured.

Appeal from Wayne.  (Gartner, J.)  Argued October 24, 1893.  Decided November 17, 1893.

Bills to foreclose certain mortgages.  Defendant Rachel Solomon appeals.  Decrees affirmed.  The facts are stated in the opinion, and in *McGraw v. Solomon*, 83 Mich. 442.

*Julian G. Dickinson* (*O. E. M'Cutcheon*, of counsel), for complainants.

*Henry & Cornville* (*Alfred Lucking*, of counsel), for appellant.

GRANT, J. 1. The bills in these three suits were filed to foreclose three real-estate mortgages executed by the defendants Solomon to the complainants. The defendants Solomon filed joint answers, averring that, at the time these mortgages were given, the defendant Rachel was engaged in the mercantile business in Oscoda, Gladstone, and Escanaba, and in the lumbering business in Iosco and Alcona counties; that defendant Selig was the husband of Rachel, was her general manager, and had the entire supervision of all her business; that she was obliged to borrow large sums of money, and incur large amounts of debt; that her lumber business was disastrous, by reason whereof she sustained great losses, and became financially embarrassed; that, in the fall of 1888, her stock of merchandise in the Oscoda store was of the value of $35,000, and, in her Escanaba and Gladstone stores, of the value of $30,000; that on the 13th day of November, 1888, she executed to the complainants a chattel mortgage on her stocks of goods in her Gladstone and Escanaba stores; that it was then agreed, by parol, that this chattel mortgage should be security for all her indebtedness to the complainants, and should stand in lieu of the real-estate mortgages, and that they should be released and discharged, and the bonds and notes to which they were collateral be canceled; that the chattel mortgage was not to be foreclosed as long as she continued to conduct her business as then managed; that complainants also agreed not to permit her other creditors to embarrass her in her mercantile business, to protect her therefrom, to secure to her the uninterrupted conduct of her business, and to make all necessary advancements

of money to aid her in arranging with and paying such creditors as might make her trouble; that, shortly after said chattel mortgage had been given, complainants took possession of the stocks of goods; proceeded to sell them under the terms of the mortgage, without regard to her rights, or the rights of the other creditors; sold them in a reckless and unbusiness-like manner; suffered them to be damaged, injured, and destroyed; and some of them were stolen. The answers further allege that the goods were amply sufficient to pay all the indebtedness secured thereby, and ask that complainants come to a just and true accounting as to the value and amount of the goods sold by them; that the value, when so ascertained, be applied in extinguishment of the debts so secured; and that complainants be decreed to release and discharge the mortgages. Upon the issue thus framed, the parties went to hearing. After the proofs were all in, the defendant Rachel, by order of the court, amended her answers by alleging that the chattel mortgage was obtained from her by fraud, undue influence, and duress. Decrees were entered for the complainants, and the defendant Rachel alone appeals.

The chattel mortgage was given to secure Emanuel Schloss and Seligman Schloss the sum of $8,000; Schloss Bros. & Co., $5,825.17,—all these being evidenced by promissory notes, and an open account of $3,061.34. In addition to the unsecured indebtedness, which was then secured by the chattel mortgage, it covered, also, the indebtedness secured by these real-estate mortgages, and was given as additional security thereto. The timber, for which a considerable portion of this land was valuable mainly, had been removed, thus impairing the security. The chattel mortgage contained the usual clause authorizing the mortgagees to take possession any time when they deemed themselves insecure, and also authorized them to sell at public auction or at retail, without notice, and in

bulk or in parcels, as they should deem best. Complainants took possession of the property, and commenced to take an inventory; but, before it was completed, the creditors of Rachel commenced replevin suits to recover goods which had been obtained from them by Rachel and her husband through fraud. The character of these frauds is stated in *McGraw v. Solomon*, 83 Mich. 442.

2. Defendant Rachel has failed to establish fraud, duress, or undue influence in the execution of the chattel mortgage, or that one of the considerations for it was the discharge of the real-estate mortgages. The case was one of vital interest to her, but she was not sworn as a witness in her own behalf, nor is her failure to do so sufficiently accounted for. Complainants felt insecure, and, as diligent creditors, had the right to insist upon additional security. Their own version of the transaction is consistent with honesty and fair dealing. There is nothing in the record to show that complainants were guilty of any fraud. In its strongest light, the evidence only tends to sustain a case of duress and undue influence. She was surrounded by her own relatives, including her husband; and from them alone comes all the evidence there is in the case that she yielded through undue influence in executing the mortgage. It is unnecessary to state the evidence, or to show the reasons why confidence cannot be placed in it, or why the testimony of the complainants is more reliable than that of the defendant. Where, in a chancery case, a statement and discussion of the facts will be of no benefit as a guide in future cases, we think it unnecessary to amplify the record.

3. It is insisted that Selig was not Rachel's agent in this transaction. It appears that Selig, as her agent, went to Detroit, the home of the complainants, and made with them the preliminary agreement for this mortgage. It is admitted in the answers that at this time he was her duly-

authorized general agent. One of the complainants went to Oscoda to look after their interests in the matter, and to obtain the additional security. An interview took place between him, Mrs. Solomon, and Selig; and it is insisted that, by her refusal then to sign the mortgage and carry out the preliminary agreement, she terminated the agency. Her counsel go so far as to claim that Selig then entered into a conspiracy with complainants to procure her signature. Such claim is not sustained by the record. But his agency is of no consequence. She was then acting for herself, had full information, and what her husband had previously done was wholly immaterial.

4. It was for the interests of the complainants to sell the goods covered by the mortgage to the best advantage. There is no reliable evidence that they did not do so. They rendered an account of all the goods sold, and of the amount received, and applied it towards the payment of their debts, after deducting the expense of foreclosure.

5. The complainants had the right to apply the amounts received, first, in payment of their debts which were alone secured by the chattel mortgage, and, second, upon their debts which were otherwise secured.

Decrees affirmed, with costs.

HOOKER, C. J., McGRATH and LONG JJ., concurred. MONTGOMERY, J., did not sit.