STATE *v.* BUNCH.

Opinion delivered June 14, 1915.

1. INDICTMENT—CHARGE OF SPECIFIC OFFENSE—CAPTION AND BODY OF INDICTMENT.—An erroneous designation in the caption concerning the character of the offense does not affect the validity of the indictment, if in the body thereof, the facts are stated with sufficient certainty to charge a specific offense.

2. BRIBERY—PUBLIC OFFENSE—WHO MAY BE SUBJECT OF.—Under Kirby's Digest, § 1602, which provides for the indictment and punishment of any one who shall bribe "any member of the general assembly * * * or person holding any place of profit or trust, under any law of the State, or under the order of either house of the General Assembly," it is an offense to bribe any person performing a public function, pursuant to the laws of the State.

3. BRIBERY—PUBLIC FUNCTIONARIES.—All attempts to bribe persons performing public functions, are included in Kirby's Digest, § 1602, which denounces the crime of attempting to bribe a "person holding any place of profit or trust, under any law of the State, or under the order of either house of the General Assembly."

4. BRIBERY—PUBLIC FUNCTIONARY—ACTS CONSTITUTING BRIBERY.—The offense of bribery, as denounced in Kirby's Digest, § 1602, is made complete, if there is any attempt to influence the decision of the engineer of a certain road improvement district, in any matter which falls within his duties under the laws of the State, whether such duty is prescribed specifically, or merely in general terms.

Appeal from Lincoln Circuit Court; *Antonio B. Grace,* Judge; reversed.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellant.

1. The indictment is sufficient. Martin was an officer and held a place of profit and trust under the laws of this State. Kirby's Digest, § 1602; Acts 1909, p. 1155. The indictment follows substantially the language of the statute.

*A. J. Johnson* and *E. W. Brockman,* for appellee.

1. The employment of an engineer by the board did not constitute him an officer under the law. Kirby's Dig., § 1602; Acts 1909, p. 1151-1155; 29 Ark. 299; 5 L. R. A. 814; 84 Ark. 540; 69 *Id.* 460; 36 Miss. 273; 6 Wall. 385; 103 U. S. 5; 63 Am. St. 174; 58 Wis. 144; 88 N. C. 133; 122 *Id.* 495; 145 *Id.* 476; 66 *Id.* 59; 84 Ark. 540; *Ib.* 537.

Martin was an employee merely. 51 N. J. L. 240; 42 N. Y. St. Cl. 481; 17 Ill. 191; 31 Atl. 384; 123 Mo. 43.

McCulloch, C. J. The State appeals from a judgment of the circuit court of Lincoln County sustaining a demurrer to the following indictment:

"The Grand Jury of Lincoln County, in the name and by the authority of the State of Arkansas, accuse T. H. Bunch of the crime of attempting to bribe a public officer committed as follows, towit: That on and before the 1st day of March, 1914, and for three months thereafter one H. R. Carter was holding a place of profit and trust under the laws of this State, towit, that of State Highway

Engineer, and by virtue of his said office it became and was his duty to draw plans and specifications for the construction of a public highway in Lincoln County, Arkansas, in a certain road district therein organized under the laws of said State and known as Road Improvement District No. 1, said district being then and there an improvement district organized and formed under and in accordance with the laws of the State of Arkansas for the purpose of improving and building a public highway in said Lincoln County that in pursuance of his duty as such highway engineer he, the said H. R. Carter, prepared and furnished said road improvement district plans and specifications for the construction of said public highway, that on or about the first day of February, 1914, the board of directors of said Road Improvement District No. 1 entered into a contract with said T. H. Bunch to construct said highway in accordance with said plans and specifications and immediately thereafter the said T. H. Bunch entered upon and began and continued the work of building said highway by means of laborers and servants employed by him for that purpose that the said board of directors of said Road Improvement District No. 1 employed H. A. Martin as supervising and inspecting engineer and it thereupon and thereby became and was his duty as such to inspect and approve or reject the materials used by said contractor, T. H. Bunch, and his servants and employees in the construction of said highway to see that they conformed with said specifications according to the contract between the said T. H. Bunch and the board of directors of said road improvement district and to supervise the construction of said road and see that same was built by said contractor in accordance with the plans and specifications aforesaid that by virtue of his said employment the said H. A. Martin was on and for sixty days before and after the 19th day of May, 1914, holding a place of trust and profit under the laws of this State, and charged with official duties as hereinbefore stated, that on or about the first day of May, 1914, the said H. A. Martin, in pursuance of his

official duties as such supervising and inspecting engineer, inspected certain material, towit, crushed rock, which was then and there being used by said contractor in the construction of said road, and notified the agents and servants employed by the said contractor, T. H. Bunch, that the same was not of the kind and quality required by the specifications and contract but of a different kind and inferior quality, and demanded that said material be not used in the building of said road; that thereafter, towit, on the 19th day of May, 1914, in the county of Lincoln and State aforesaid, the said T. H. Bunch fraudulently intending and contriving to wrong, cheat and defraud the said board of directors of said Road Improvement District No. 1 and the taxpayers of the said district, and corruptly, fraudulently and feloniously contriving and intending to corrupt and influence the official acts, decisions and conduct of the said H. A. Martin in his official capacity as supervising and inspecting engineer of said Road Improvement District No. 1 by means of a bribe, present and reward of pecuniary value, towit, the sum of one hundred dollars, did then and there wilfully, unlawfully, fraudulently, corruptly and feloniously cause to be delivered to the said H. A. Martin a draft or check commonly called a piece of exchange, drawn on May 19, 1914, by the Twin City Bank of Argenta, Arkansas, on the National Bank of Commerce at St. Louis, Missouri, signed by Bernice Laster as the assistant cashier of said Twin City Bank, for the sum of one hundred dollars, payable to the order of the said H. A. Martin, by the name of Allen Martin, and did then and there wilfully, unlawfully, fraudulently and feloniously request the said H. A. Martin not to interfere with or further object to the use of such improper and inferior rock being used by said T. H. Bunch and servants in the construction of said road contrary to the statutes made and provided and against the peace and dignity of the State of Arkansas.''

It will be seen from an analysis of the language of the indictment that it charges appellee with bribing one H. A. Martin, who was the engineer of a certain road improve-

ment district in Lincoln County, for the purpose of influencing his decision in passing upon the quality of crushed rock to be used in the construction of the road.

The statute under which the indictment was found reads as follows: ''If any person shall, directly or indirectly, promise, offer to give, or cause or procure to be promised, offered or given, any money, goods, right in action, bribe, present or reward, or any promise, contract, undertaking, obligation, or security for the payment or delivery of any money, goods, right in action, bribe, present or reward, or any other valuable thing whatever, to any member of the General Assembly of the State of Arkansas, after his election as such member, and either before or after he shall have qualified and taken his seat, or to any officer of the State, or person holding any place of profit or trust, under any law of the State, or under the order of either house of the General Assembly, with intent to influence his vote or decision on any question, matter, cause or proceeding which may then be pending, or may by law, or under the Constitution of the State, be brought before him in his official capacity, or in his place of trust or profit, and shall be convicted thereof, such person so offering, promising, or giving, or causing, or procuring to be promised, offered or given, any such money, goods, right in action, bribe, present or reward, or any promise, contract, undertaking, obligation or security for the payment or delivery of any money, goods, right in action, bribe, present or reward, or other valuable thing whatever, and the member, officer or person who shall in any wise accept or receive the same, or any part thereof, shall be liable to indictment in any court having jurisdiction, and shall, upon conviction thereof, be fined in any sum not exceeding double the amount so offered, promised or given, and be imprisoned in the penitentiary not exceeding two years; and the person convicted of so accepting or receiving the same, or any part thereof, if an officer or person holding any such office, place of trust or profit as aforesaid, shall forfeit his office or place; and any person so convicted shall for-

ever be disqualified to hold any office of trust or profit under the Constitution or laws of this State.'' Kirby's Digest, § 1602.

(1)   It is first contended by counsel for appellee, in support of the court's ruling, that the indictment is defective because it charges the crime of ''attempting to bribe a public officer'' without describing the public office or setting out that the person named was in fact a public officer.   It is true that in the caption of the indictment the offense is named as that of ''attempting to bribe a public officer,'' but the body of the indictment does not attempt to set forth that offense.   On the contrary, it charges the crime of attempting to bribe a certain person, who, it is alleged, was a person holding a place of profit and trust under the laws of the State, if that be an offense. The statutes of this State provide that an indictment shall be sufficient if it can be understood therefrom ''that the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon conviction according to the right of the case.'' Kirby's Digest, § 2228, third subdivision; and that an indictment is sufficient if it contains ''a statement of the acts constituting the offense in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended.'' Kirby's Digest, § 2243, second subdivision.   An erroneous designation in the caption concerning the character of the offense does not affect the validity of the indictment if in the body thereof the facts are stated with sufficient certainty to charge a specific offense. *Lacefield* v. *State,* 34 Ark. 275; *Johnson* v. *State,* 36 Ark. 242; *Williams* v. *State,* 47 Ark. 230; *State* v. *Culbreath,* 71 Ark. 80; *Harrington* v. *State,* 77 Ark. 480; *Kelley* v. *State,* 102 Ark. 651.

In *Williams* v. *State, supra,* it was said to be unimportant what offense was named in the caption if ''the particular offense of which defendant was accused was made distinct and certain by the statement of the circumstances of its commission, in the body of the count.''   And in

*State* v. *Culbreath, supra,* the court said: ''The name of the crime is controlled by the specific acts charged, and an erroneous name of the charge does not vitiate the indictment.''

(2) It is clear from the body of the indictment in this case that the State intended to charge the appellee with the crime of attempting to bribe, not a public officer, but a person holding a place of profit or trust under the laws of the State. The accused could not have been misled by the misdescription of the offense in the caption, and if the facts set forth in the body of the indictment constitute a public offense then the indictment is sufficient.

The principal contention in support of the court's ruling, and the one which doubtless sets forth the reasons upon which the trial court based its decision, is that the phrase ''person holding any place of profit or trust under any law of the State'' is synonymous with the term ''public office,'' and that the indictment is not sufficient unless it charges that the person attempted to be bribed was a public officer. We can not give our assent to that construction of the statute, for to do so would be to entirely eliminate the phrase above quoted and to emasculate the statute and defeat its manifest purpose in some respects.

Counsel for appellee rely on certain cases involving the question of the right to hold more than one office under provisions of Constitutions and statutes using language, in some respects similar to that in the statute now under examination; but an examination of those cases cited in the brief will show that the provisions construed in those cases are not indentical with our statute. For instance, the North Carolina cases construe a clause of the Constitution which provides that ''no person holding any office or place of trust or profit under the United States, etc., * * * shall hold or exercise any other office or place of trust or profit under the authority of this State.'' It was held there that the phrase ''place of trust or profit under the authority of this State'' was synonymous with

the preceding word "office," and that persons holding office were not disqualified from performing other public functions.  *Clark* v. *Stanley,* 66 N. C. 59; *Doyle* v. *Raleigh,* 89 N. C. 133.

It is obvious from an analysis of our statute, however, that an entirely different meaning was intended, and, as before stated, if we thus limit the language regarding persons holding a place of profit or trust, it gives it no meaning whatever and amounts to an elimination of that much of the statute.  In the first place, if that interpretation be placed upon the statue, there is no statutory offense of bribery except as to acts which relate to members of the General Assembly and other State officers.  There would be no statute at all relating to bribery of a county or township officer or any persons who discharged public functions unless they be members of the General Assembly or other State officers.  The statute was intended to be comprehensive, and it obviously was not the intention of the lawmakers to limit it merely to members of the General Assembly and other State officers.  The statute relates to "any person holding any place of profit or trust under any law of the State," and it seems clear that the lawmakers meant to make it an offense to bribe any person performing a public function pursuant to the laws of the State.  In addition to that, the statute adds the words "or under the order of either house of the General Assembly," and surely it can not be plausibly urged that the Legislature has any authority to create a public office merely by an order.  An office must be created by the Constitution or statutes of the State, and to provide for the bribing of an officer "under the order of either house of the General Assembly," would be a contradiction of terms, as there could be no such thing as an office created in that way.

(3)  Again, it is provided in the statute that such persons so offering or giving the reward, together with "the member, officer or person who shall in any wise accept or receive the same" shall be liable to indictment, etc.  Now, it is clear from that language that the Legis-

lature meant, in speaking of a person, to designate others than those who hold public office, and when this language is considered with the preceding language already quoted, it shows that something more was meant in designating a "person holding any place of profit or trust" than a member of the Legislature or other officer of the State. Originally, the offense of bribery could only be based upon a reward offered or given to a judge or other person concerned in the administration of public justice (5 Cyc. of Law, 1040), but even at common law the offense, on account of the enormity of its moral effect, was greatly broadened so that it applied to almost any kind of an officer or person performing a public function. Most of the American statutes on the subject are more comprehensive than the common law definition, and our statute is particularly so, it being obvious that the lawmakers intended to include all attempts to bribe persons performing public functions. The courts very generally hold that the statute applies to a *de facto* officer. 5 Cyc. of Law, 1041; *Diggs* v. *State,* 49 Ala. 311; *State* v. *Duncan,* 153 Ind. 318.

In the Indiana case just cited, there was an indictment for an attempt to bribe a road engineer appointed by the county board of commissioners, and the indictment was predicated on a statute which made it unlawful for a "person holding an office of trust or profit under the laws of the State" to solicit or accept a bribe. The court held that the engineer thus appointed was a *de facto* officer, although not a resident of the county, and that a public offense was charged. In disposing of the question, the court said: "Bribery is an offense against public justice. The essence of it is the prostitution of a public trust, the betrayal of public interests, the debauchment of the public conscience." In that case the engineer himself was the accused party in the indictment, but the case of *State* v. *Ray,* 153 Ind. 334, involved a prosecution of another party for conspiring to bribe the engineer, and the court held that the facts constituted an offense under the bribery statute.

In *State* v. *Gardner,* 54 Ohio St. 24, 31 L. R. A. 660, the court held that one charged with offering a bribe to a city commissioner could not defend on the ground that the statute under which such city commissioner held office was unconstitutional, and in disposing of the case the court said: "How is the corruption, the guilt of one who attempts to pollute the fountains of justice by bribing its acting officers, and thus cheat his neighbors and the community, any the less substantial, or the State's case against him any the less meritorious, because it may turn out that the officer's title would not stand the test of a *quo warranto?*"

We find two Federal cases which reach very closely to the question now before us, and we think are correct interpretations of the law. The first is *United States* v. *Van Leuven,* 62 Fed. 62, where there was an indictment under an act of Congress which makes it bribery to offer or give any money or other thing of value "to any officer of the United States or to any person acting for or on behalf of the United States in any official function under or by virtue of any department or office of the Government thereof." The functionary sought to be bribed was a member of the board of surgeons appointed by the United States Commissioner of Pensions to examine applicants for pensions, and it was contended, as in the present case, that the statute did not make it unlawful to attempt to bribe any person other than a public officer or his deputy. The district judge before whom the case was tried delivered an opinion in which he said: "It is urged in argument that this provision of the statute requires that the person must act in an official capacity, and that this requirement can only be met when the person is an 'officer.' * * * This construction would wholly destroy the force of the second definition in section 5501. If no person can act in an official capacity, except an officer, and no one can be an officer, except one appointed in the mode provided in section 2, article 2, of the Constitution, then it was useless to place in section 5501 any other definition than that of the opening words, towit, 'Every offi-

cer.' It is clear, however, that Congress intended to include within the section persons other than those who were technically 'officers of the United States,' as that term is defined by the Supreme Court. The section includes all persons acting for or on behalf of the United States, under or by virtue of the authority of any department or office of the Government, in an official capacity."

The same statute was under consideration by one of the district courts of the United States in another case (*United States* v. *Ingham*, 97 Fed. 935), where the indictment charged an attempt to bribe a secret service operative employed by the Secretary of the Treasury to aid in the detection and suppression of crime against the revenue law, and the district judge in his opinion said: "I agree that McManus was not an 'officer' of the United States, but I am satisfied that he was a 'person acting for or on behalf of the United States in an official function, under or by authority of a department or office of the Government thereof,' and that he held a 'place of trust or profit,' within the meaning of section 5451 of the Revised Statutes. The phrase 'official function,' taken in connection with the other language of the section, is, I think, of broader scope than the defendant's counsel is willing to admit. His position is that no one can exercise an official function unless he be an 'officer' of the United States; and, if this argument is to prevail, the two provisions of the section are identical in meaning, although it is clear that Congress supposed the words to be descriptive of two distinct classes of persons. This result is to be avoided if a fair and reasonable construction will lead to a different conclusion. In my opinion such a construction is obvious, and relieves the case in hand from difficulty. The 'official function' spoken of is not necessarily a function belonging to an office held by a person acting on behalf of the United States; it may also be a function belonging to an office held by his superior, which function has been committed to the subordinate (whether he be also an officer, or a mere employee) for the purpose of being executed."

We are not aware that these cases have been reviewed or the same question passed upon in any of the appellate courts of the United States, but we are of the opinion that they are sound expositions of the law and have a direct bearing in reaching a conclusion in the construction of the statute now before us. Our conclusion is that the different terms of the statute are not synonymous and that it was the manifest purpose of the Legislature to make it an offense not only to bribe a public official but also to make it an offense to bribe any "person holding any place of profit or trust under any law of the State or under the order of either house of the General Assembly."

(4) It has also been suggested that in order to make an offense under the clause of the statute concerning the attempt to bribe a person holding a place of profit, it must be to influence such person in the discharge of some specific provision of the law, or order of one of the houses of the General Assembly. We do not think, however, that the suggestion is well founded, for public duties may be and are often conferred by statutes in general terms, and it is a very narrow view of the statute to say that there can be no offense unless the statute itself prescribes a specific duty, the discharge of which is sought to be influenced in the attempt to bribe. The present case presents a fair illustration of the weakness of such a contention. The road improvement district mentioned in the indictment was created by an act of the General Assembly and a board of directors was created with authority to construct the improvement and to employ engineers and other agents to assist in carrying out the purposes of the statute. No specific duties are pointed out in the statute, not even those of the directors themselves, it being merely enjoined upon them the duty of constructing the improvement. While the directions of the statute are general in terms, the effect can not be misunderstood, and the attempt to bribe any of the officers or authorized agents of the district in the discharge of their respective duties would be an attempt to influence their decision as public

functionaries within the meaning of the statute. Moreover, the statute does not say that it shall only be an offense to bribe a person holding a place of profit or trust merely as to his decision with respect to some specific act or duty, but the offense is created in attempting, by offer or gift of a bribe, to influence any person holding any such place of profit or trust under the law of the State in his decision upon any matter brought before him "in his place of trust or profit." Thus the offense is made complete if there is any attempt to influence his decision in any matter which falls within his duties under the laws of the State, whether such duty is specifically prescribed or merely in general terms.

We are of the opinion, therefore, that the indictment in this case charges a public offense, and that the circuit court erred in sustaining the demurrer. The judgment is reversed and the cause remanded with directions to overrule the demurrer, and for further proceedings.

HART, J., dissents on the grounds that the facts stated in the indictment do not show that the person alleged to have been bribed was performing any governmental function and therefore did not come within the terms of the statute.