## STATE OF NORTH DAKOTA, Respondent, v. FRANK S. JOHNSON, Appellant.

### (232 N. W. 473.)

Opinion filed October 14, 1930.

Appeal from the District Court of McLean County, *McFarland, J.*
*McCulloch & McCulloch,* for appellant.

*James Morris,* Attorney General, and *R. L. Fraser,* State's Attorney, for respondent.

BURKE, Ch. J. This is an appeal from a judgment of conviction for the larceny of two white muley steers and one muley heifer, the property of Helmuth Krueger.

Appellant assigns as error the overruling of a motion to strike out the following testimony: "Well now, tell us what happened when this man came running out and invited you in to dinner?" Ans. "Why we started getting out of the truck and when he seen them get out of the truck or noticed Charlie Ross he looked kind of excited about something." This testimony was given by Helmuth Krueger owner of the animals, who had testified that he was at defendant's place earlier in the day stating that they were butchering a steer at the time; that he saw a heifer there which he recognized as his heifer and said: "I asked Frank Johnson where he got my heifer? And he

said, he traded for this heifer. 'Can't you see my ear marks on her,' he said. And I told him, that's too bad Frank, but she has got my brand on it. He said, 'if she is yours why take her.' I asked them if there were any stray cattle around, and he said, 'yes, we had a white steer down in the pasture,' and I asked him, you haven't seen a red muley steer, blind in one eye, and he said, 'no.' I thought maybe I had better get somebody to go over there with me so I would have some witnesses. I got Charlie Ross and Vernon Peterson and went back to Frank Johnson's place. Frank came running out and asked us to come in to dinner." Here follows the testimony that the court refused to strike out. The next question is, "And can you tell us what if any motion he went through at that time?" Ans. "Why when he seen Charlie Ross get out of the truck he turned around and went like that, as if he was worried about something." Another motion was made to strike the answer out as a conclusion and the attorney general said: "We will concede that the latter part of the answer can be stricken out. This answer as to motions I think should stand." The court: "That part may be stricken out that the attorney general consents." Ques. "We just want to know how he acted? Not any conclusion of your own, but I just want to know what motions he went through." His actions are then described without any further objection. Krueger also recognized the steer they were butchering as his steer. They found the Krueger brand on the butchered steer, and the defendant Frank Johnson, said to Bill Johnson, "We made a mistake we butchered Fred's steer." Krueger is sometimes called Fred or Fritz. It was certainly proper and competent to show the defendant's actions and demeanor at that time.

"There are numerous matters, which, from their very nature, cannot be stated or described in such language as will enable one not an eye witness to form an accurate judgment. Accordingly, as to such matters, opinions of nonexperts are held admissible as of necessity. To illustrate, opinions of nonexperts have been received as to the disposition or temper of animals; the appearance of animals, or of things. In many instances courts admit nonexpert opinions as to the appearance or condition of a human being, nervous condition before and after accident; nervous wreck; looked like a white woman; frightened; fighting mad; body looked as though struck with hot iron and scarred;

child was fully developed; looked like he was looking or waiting for someone; appeared to be keen; excited; nice looking; agitated and worried; could not walk as well after accident," and many other illustrations given by 3 Jones on Evidence, page 2302 to 2306, §§ 1250 and 1251.

In the case of Schultz v. Frankfort M. Acci. & P. G. Ins. Co. 151 Wis. 537, 43 L.R.A.(N.S.) p. 520, 139 N. W. 386, the Wisconsin court said: "Conclusions of fact are not always inadmissible, and, so far as they relate to collateral facts not directly in issue, save much delay and circumlocution. The same is true of leading questions. Ordinary conversation and ordinary writings abound in conclusions of fact. Most of these are permissible in testimony. To refuse to permit a witness to testify that one appeared 'frightened' or 'insolent' or 'overbearing' or 'enraged' has the effect merely of shutting out the testimony of all eyewitnesses of these conditions who have not extraordinary powers of description. Cross-examination will, in all such cases, sufficiently disclose what basis the witness has for his conclusion." There was no error in the admission of this testimony.

Appellant assigns as error the overruling of an objection to the following testimony: Ques. "Now the day that you were down there, was there a public sale in that neighborhood?" Mr. Sullivan, "We object to that on the ground that it was immaterial and irrelevant." This testimony appears in the redirect examination of Mr. Krueger by the attorney general, and it refers to the day, that Krueger was at Johnson's place when they were butchering and when he found his three head of cattle, including the one they were butchering. This testimony is followed by the following question, "Near by?" Ans. "Why it was southeast of their place." Ques. "How far?" "About four or five miles, something like that." This testimony went in without objection, and it shows that on that particular day there was a sale about four or five miles southwest of the defendant's place. It is difficult to see just what relevancy this testimony has, to the issue on trial, but it is just as difficult to see how it is prejudicial to the defendant and if it is error, it is error without prejudice.

It is the contention of the appellant that, the evidence does not sustain the verdict. This claim is based largely on the argument that the three head of cattle were strays which came to defendant's place;

that he was rightfully in possession of them and therefore, the defendant cannot be guilty of larceny.

Section 9914, Comp. Laws of 1913, reads as follows:

"One who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or the use of another person who is not entitled thereto, without having first made such effort to find the owner and restore the property to him as the circumstances render reasonable and just, is guilty of larceny."

Assuming, that the three animals were estrays as appellant contends, it was for the jury to say from all the evidence whether the defendant made such efforts to find the owner and restore the property to him as the circumstances render reasonable and just. If he did not, he was guilty of larceny under the statute. The animals were branded with Krueger's brand. When Krueger claimed the white heifer, the defendant said, that he had traded for her, but could not tell from whom he got her. When Krueger claimed the steer that was butchered, he said, "We have made a mistake Bill, we butchered Fred's steer." When again asked where he got the heifer, he said, "Well boys you got the goods on me; but I won't squeal on the other fellow." He admits that he did say, "I guess you have the goods on me; I will have to take my medicine," but says in explanation, "I thought if I killed a critter with a brand on it there would be a penalty." There is no evidence or claim that he advertised the estrays, if they were estrays, as provided by law, and his explanation of his possession of the animals was for the jury. The evidence fully sustains the verdict and the judgment is affirmed.

BIRDZELL, NUESSLE, BURR and CHRISTIANSON, JJ., concur.