[File No. 82, Cr.]

STATE OF NORTH DAKOTA, Respondent, v. FRED BOSSART and Henry Bossart, Appellants.

and

STATE OF NORTH DAKOTA, Respondent, v. JOHN ELLING-SON, Appellant.

(241 N. W. 78.)

Opinion filed February 20, 1932.

*L. T. Van Slyke* and *F. J. Graham,* for appellants.

C. A. *Whipple* and *Geo. W. Thorp,* for respondent.

14

Burke, J. On the 3rd day of March, 1931, an information was filed against the defendants, Fred Bossart and Henry Bossart, stating that on the 11th day of January, 1931, within the county of Dickey and state of North Dakota, the above named defendants had committed the crime of grand larceny, committed as follows to wit: That at the said time and place the said defendants did then and there wilfully, unlawfully and feloniously, by means of fraud and stealth, take, steal and carry away certain goods, wares and merchandise, the property of P. R. Jenner, and not the property of said defendants, with the intent then and there had by the defendants to deprive the owner thereof, which said goods, wares and merchandise were of the value of twenty dollars, which are named and described as follows: (description of the goods alleged to have been stolen.) A similar information was filed against John Ellingson charging him with the same offense committed at the same time and place. On stipulation the three defendants were all tried together in one action. On the 4th

day of March, 1931, an application was made by the state's attorney for a change of the place of trial of said defendants. The motion for change of place of trial was granted on the 17th day of March, 1931, and the place of trial was changed to Barnes county, where the case was tried before Hon. P. G. Swenson, on the 5th day of June, 1931, and a verdict returned against each of the defendants as follows: "we the jury duly empaneled and sworn to try the above entitled action do find the defendant guilty as charged in the information of the crime of grand larceny." Thereafter and before sentence the defendant moved in arrest of judgment, first, that the information filed alleged the property to be of the value of twenty dollars and in no event could the defendant be found guilty of any greater crime than that of petit larceny. There are other questions raised which will be considered in connection with the admission of testimony. The motion in arrest of judgment was overruled and when asked if they had any legal reason why sentence should not be pronounced, Mr. Graham, for the defendants said: "I do not think I have anything more to say than I have already presented in the motion in arrest of judgment." Each defendant was sentenced to the penitentiary for a period of two years and six months. Thereafter there was a motion for a new trial, which was denied and from the judgment of conviction and sentence the defendants appeal.

Appellants contend, first, that the showing for a change of place of trial was an abuse of discretion; that the statements in the affidavits are merely conclusions and not statements of fact. It is true that there are many conclusions stated in both the affidavits for the motion and those opposing it; but there are also many statements of facts. The affidavit of the state's attorney shows that the prosecution was instituted by the sheriff of the county, who claimed to have found some of the stolen property in the possession of the defendants; that he would be the principal witness. That after the arrest of the defendants and while driving on the highway he shot and killed one of them; that he had previously been very active in searching various premises, attending numerous parties and dances where intoxicating liquors might be found and had become very unpopular; that a certain newspaper,

a copy of which was attached to the affidavit, was circulated in Dickey county, referring to the sheriff as facing a first degree murder charge, and in glaring scarehead lines the following phrases were set out: "Mikkelson's ghost rises to torment county court: father of slain boy promises to bring criminal prosecution: sheriff's act not justified by any legal or moral standard say critics." The paper commenting on the robbery, denies the responsibility of the defendants and each of them and of Mikkelson; that the sheriff threatened to shoot one of the Bossarts. The paper further argues the facts vigorously insisting and explaining to the people of this county that the defendants and Mikkelson were not guilty and that the sheriff was wholly to blame in said shooting and quoting from the paper "the conclusion must be that the sheriff being an emotional, irresponsible person—a saddist in fact—craving an opportunity to kill, used his weapon without any excuse or provocation. That an official murder has been committed by this official and that he is an unsafe person to carry firearms is apparent. Ever since Crandall became sheriff of Dickey county he has made himself obnoxious to the people; he appears to believe that it is his duty to interfere in social matters, to snoop, to use force in an alleged moral crusade and as a consequence has made innumerable enemies. That article refers to a gun play in which the sheriff was involved at Forbes and another altercation the sheriff had and there are many other instances, too numerous to mention, showing that Crandall is an unbalanced person, unfit to handle firearms or to hold a position as a peace officer. In the language of the street it was 'a perfect crime:' sheriff Crandall took Mikkelson for a ride in approved Chicago style with the inevitable consequences of such a ride."

There are many affidavits alleging the unpopularity of the sheriff, who as the record shows, was the complainant and the principal witness for the state. We are of the opinion that there was no abuse of discretion in granting the motion for change of place of trial.

Appellants are right in their contention that the defendants could only be convicted for petit larceny.

Section 9915, Compiled Laws 1913, reads as follows: "Larceny is divided into two degrees; the first of which is termed grand larceny,

the second petit larceny." Section 9916, Compiled Laws 1913, defines each degree as follows: "Grand larceny is larceny committed in either of the following cases:

1. When the property taken is of value exceeding twenty dollars.

2. When such property, although not of value exceeding twenty dollars in value, is taken from the person of another.

Larceny in other cases is petit larceny."

Grand larceny, therefore, is the taking of personal property exceeding twenty dollars in value or the taking of personal property from the person without regard to its value when such taking is accomplished by fraud and stealth and with intent to deprive another thereof. When personal property is not taken from the person or when it is not of greater value than twenty dollars, although accomplished by fraud and stealth with intent to deprive another thereof, it is only petit larceny. In this case, it is true, that the information states that the defendants had committed the crime of "Grand Larceny," but in the charging part of the information it alleges that the goods stolen were of the value of twenty dollars. This is the important part of the information and it only charges petit larceny. "The caption (or formal part) of an indictment or information need not state or describe the offense charged, and if it does so, any misstatement therein or variance from the indictment will be immaterial." 31 C. J. 609, § 90; Cronkhite v. State, 11 Ind. 307; State v. Bunch, 119 Ark. 219, 177 S. W. 932; Williams v. State, 47 Ark. 230, 1 S. W. 149; Howard v. State, 67 Ind. 401; State v. McIntire, 59 Iowa, 264, 13 N. W. 286. id., 59 Iowa, 267, 13 N. W. 287; State v. Howard, 66 Minn. 309, 34 L.R.A. 178, 61 Am. St. Rep. 403, 68 N. W. 1096; State v. Emmons, 55 Or. 352, 104 Pac. 882, 106 Pac. 451; State v. Jarvis, 18 Or. 360, 23 Pac. 251, 8 Am. Crim. Rep. 367; State v. Sweet, 2 Or. 127. It follows as a matter of course that defendants could only be tried for and convicted of petit larceny as charged in the information.

Appellant contends there was no evidence to show that the property found in the possession of John Ellingson was taken from the store on the night of the robbery. When Ellingson was arrested he had in his

automobile a quantity of groceries and some merchandise. After his arrest he was sent into Merricourt by the sheriff, who remained in his own automobile with Mikkelson, with whom he had an altercation, in which Mikkelson was shot. Instead of driving into Merricourt as ordered by the sheriff, Ellingson turned off from the road, threw the groceries into a ditch and then proceeded to Merricourt driving around the section. When Ellingson was questioned about the merchandise he had in his car when he was first arrested he said, "I might as well tell you, you've got me anyway," and he told the sheriff where he could find the goods. The sheriff found the goods as directed by Ellingson and there were cost marks on several of the articles found in Ellingson's possession, which Mr. Jenner, his wife and the clerk positively identified as being put on the goods in the Jenner store and there is evidence showing that the goods were the same brands as those kept in the store. The case of State v. Shoars, 59 N. D. 67, 228 N. W. 413, is a case where the defendant was charged with receiving stolen property and this court held that "the identity of the articles received with those stolen, must be shown beyond a reasonable doubt, but identification need not be direct or absolute, but may be proven by circumstantial evidence." State v. Johnson, 36 Wash. 294, 78 Pac. 903; Underhill, Crim. Ev. 3d ed. p. 666, § 465, and cases cited; Gibbs v. State, 130 Ala. 101, 30 So. 393; Jupitz v. People, 34 Ill. 516; Com. v. Slate, 11 Gray, 60; People v. Pitcher, 15 Mich. 397.

"Personal possession of stolen property, not satisfactorily explained, constitutes an evidential fact from which complicity in the larceny thereof may be inferred." State v. Rosencrans, 9 N. D. 163, 82 N. W. 422; State v. McCarty, 47 N. D. 523, 182 N. W. 754; State v. Johnson, 60 N. D. 56, 232 N. W. 473.

The goods were found in the possession of the defendant Ellingson soon after similar goods were taken from the store. Some of the goods had the cost marks of the store. The action of the defendant in trying to get rid of the goods by throwing them away and his admission when he was re-arrested "I might as well tell you, you've got me anyway" was evidence from which the jury might well infer guilt, especially when considered with all the other evidence in the case.

Appellant specifies as error the overruling of objection to the following question asked on cross-examination of Henry Bossart:

"Q. Did you on or about the 17th day of April, 1931 drive one Tex Jennings and one Henry Roth into Edgeley in your car, waiting in the park in Edgeley pursuant to arrangements, whereby these two men were to and did make a burglarious entry into the bank at Edgeley for the purpose of getting money unlawfully and for you to wait in the park or anywhere else in Edgeley in order to drive Tex out again for his escape?

"A. No, I did not."

It was specifically stated by the attorney for the state that the information asked for was only for the purpose of effecting the credibility of the witness' testimony. In the case of State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052, Judge Bartholomew said: "Where a cross-examiner seeks to impair the credibility of a witness by proof of collateral crimes, he should be confined to specific acts. He may ask the witness whether or not he committed the act, or whether he has been convicted thereof or imprisoned therefor. But, manifestly, the interrogatories should be so framed as to permit the witness to admit or deny the act itself. He should not, for impeachment purposes, be asked questions which simply suggest inference. It has repeatedly been held that a party could not be asked whether or not he had been indicted for a particular offense, on the ground that an indictment did not prove guilt." Again on page 558 of 5 N. D., 35 L.R.A. 533, 67 N. W. 1064, the court said: "Nothing is better settled than that, where a witness is asked as to collateral crimes for this purpose, his answers are absolutely conclusive on the party asking. 3 Rice, Ev. § 222." State v. McGahey, 3 N. D. 293, 55 N. W. 753; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Oien, 26 N. D. 552, 145 N. W. 424; State v. Nyhus, 19 N. D. 326, 27 L.R.A.(N.S.) 487, 124 N. W. 71; State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482; State v. Keillor, 50 N. D. 728, 197 N. W. 859; State v. Kerns, 50 N. D. 927, 198 N. W. 698; State v. Denny, 17 N. D. 519, 117 N. W. 869; State v. Haynes, 7 N. D. 70, 72 N. W. 923; State v. Malmberg, 14 N. D. 523, 105 N. W. 614.

In the instant case the trial judge required the state to frame the question so that the witness could admit or deny the act, the witness denied it and the examination ended with his answer. The testimony was admitted in accordance with the practice as outlined in the Kent Case. The case of State v. Apley, 25 N. D. 298, 48 L.R.A.(N.S.) 269, 141 N. W. 740, relied on by appellant, is really against appellant's contention inasmuch as this court reversed the lower court in sustaining objections to the testimony relating to the conduct of the prosecuting witness offered for the purpose of impairing her credibility. That part of the opinion upon which appellant relies does not include the questions and answers asked of the defendant on cross-examination. The court states that "In view of another trial we will state that the cross-examination of the defendant, permitted over objections, exceeded proper bounds." From what follows in the opinion it appears that the jury might have drawn improper inferences from this testimony, the very thing that is condemned in the Kent Case, in the following language: "He (the defendant) should not, for impeachment purposes be asked questions which simply suggest inference. The interrogatories should be framed so as to permit the witness to admit or deny the act itself."

There was no error in overruling the defendants' motion for a directed verdict, as the information clearly charges the crime of petit larceny and the evidence fully sustains the charge. No claim was made that the information charged only petit larceny until after the verdict was returned. The case was tried upon the theory that the information charged grand larceny, evidence was offered to show that the property involved exceeded twenty dollars in value. The court, in carefully prepared instructions, submitted the case to the jury upon the theory that the information charged grand larceny. He defined very clearly both degrees of the crime of larceny and instructed the jury accordingly. The jury undoubtedly intended to return and did return a verdict for grand larceny.

No objection was made to this verdict and when it was returned the same was received and duly recorded. If the objection that the defendants could not be convicted of more than petit larceny had been

made at that time the trial judge could have sent the jury back under §§ 10,892 and 10,894, Compiled Laws 1913, and directed them to reconsider their verdict, or in other words, have instructed them that they could not find the defendants guilty of any crime greater than that of petit larceny. The question, however, was not raised until it was raised in a motion in arrest of judgment. It was urged again before sentence was imposed and also in motion to vacate and set aside the judgment and sentence and for a new trial. A verdict and judgment for grand larceny on an information charging only petit larceny cannot stand and since the defendants raised the question by motion to vacate and set aside the judgment and sentence and for a new trial, we are of the opinion that the motion should have been granted.

The judgment of the District Court is reversed and a new trial is ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.