[File No. Cr. 144.]

STATE OF NORTH DAKOTA, Respondent, v. J. A. McKENZIE, Appellant.

(273 N. W. 1.)

Opinion filed April 24, 1937.

*T. F. Murtha,* and *C. H. Starke* (on oral argument), for appellant.

*P. O. Sathre,* Attorney General, and *A. M. Kuhfeld,* Special State's Attorney, for respondent.

BURR, J. The complaint charged that on March 30, 1935 the defendant did "wilfully, maliciously and feloniously butcher and kill one yearling steer, branded $\frac{V}{L}$ on the right ribs; said steer then and there being the property of another, to-wit: the complainant, . . ."

A preliminary examination was had, testimony taken, and the defendant held to the district court.

The information alleges "the crime of Larceny of Live Stock," charging that the defendant, on the 2nd day of January 1935, did "wilfully, unlawfully, maliciously and feloniously kill, take, steal and carry away, said act being accomplished by fraud and stealth, one calf branded $\frac{V}{L}$ on right ribs, said calf being then and there the property of another, to-wit: Lars Vanvig, and of a value in excess of Twenty and 00/100 Dollars ($20.00), with intent then and there wilfully, unlawfully, maliciously, and feloniously to deprive the owner thereof."

Upon arraignment the defendant filed a demurrer to the informa-

tion, a "motion to set aside and to quash" the information, and an "objection to the introduction of any testimony" under the information. At the close of the state's case he moved to dismiss and renewed the motion at the close of the case. After verdict he moved arrest of judgment, and in a motion for a new trial incorporated the objections contained in these various motions.

We need not discuss these objections seriatim or refer to the documents in which they are set forth, but treat the bases briefly.

Defendant asserts the information was filed without a preliminary examination on the crime charged.

A preliminary examination was held and testimony taken upon the complaint. Under the provisions of § 10,629 of the Compiled Laws it is the duty of the state's attorney to set "forth the crime committed according to the facts ascertained on such examination and inquiry and from the written testimony taken before the magistrate, whether it is the offense charged in the complaint upon which the examination was had or some other offense." There is no showing the state's attorney did otherwise. On this point see State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. O'Neal, 19 N. D. 426, 429, 124 N. W. 68.

Another objection is that there are two crimes charged in the information.

The accusations are based on § 9992 of the Compiled Laws as amended by chapter 92 of the Session Laws of 1929. This amended statute states: "Every person who wilfully and unlawfully marks, brands, kills or sells, or causes to be marked, branded, killed or sold, any horse, mule, cow, calf or other meat cattle, or any sheep or swine, or poultry, the property of another, is guilty of a felony, and upon conviction thereof, is punishable by imprisonment in the penitentiary for not less than one and not exceeding five years, or by fine of not less than five hundred dollars and not exceeding one thousand dollars or by both. Every person who commits grand larceny of any livestock or poultry above specified, the property of another, shall, upon conviction thereof, be punished by imprisonment in the penitentiary not less than one and not exceeding ten years, or by a fine of not less than five hundred dollars, and not exceeding one thousand dollars or by both such fine and imprisonment."

Killing or selling or misbranding is subject to a specific penalty and may be committed in manifold ways. Undoubtedly the *complaint* was framed under this provision.

But this section specifically describes another crime—the *grand larceny* of such livestock. Clearly the *information* is based upon this portion, and § 9916 of the Compiled Laws says it is *grand* larceny "when the property taken is of value exceeding twenty dollars."

The crime charged is not named "grand larceny;" but the name is merely the conclusion of the pleader. The crime charged depends upon the facts alleged rather than upon the name given. State v. Noah, 20 N. D. 281, 124 N. W. 1121; State v. Bossart, 62 N. D. 11, 241 N. W. 78. Thus, if the information sets forth grand larceny, it is immaterial that the pleader omits the word "grand."

In order to charge grand larceny it was not necessary for the pleader to allege the defendant killed the calf. We do not deem it necessary to determine the word "kill" is surplusage nor that it is incumbent upon the state to prove killing. It is clear the calf died. Its alleged hide was introduced as an exhibit in the case, and without the calf. Thus, it is assumed the thief skinned it. But the information does not state two offenses.

The case was submitted to the jury and the defendant found "guilty as charged in the information of the crime of Larceny of Live Stock." The defendant's motion for a new trial was denied, and judgment was duly pronounced. The defendant appealed from the judgment and from the order denying his motion for a new trial—the appeals being heard together.

All the matters involved in the demurrer, motion to quash, objection to the introduction of testimony, etc., were presented on appeal.

The motion for a new trial specifies numerous alleged errors of the court; but we confine ourselves to the specifications that "The verdict is clearly against the evidence. . . ." and "that the state failed to prove the corpus delicti of the crime as required by law."

Deputy Sheriff Kunkel testified in effect that he stopped defendant on a road in Billings county and searched his car. He took two hides from the car and unrolled one with the brand XN, but the other was tied with bailing wire and was frozen. He found in the car a rifle, a butcher knife (not a skinning knife), and a butcher's steel. He

gave the defendant a receipt for the two hides and took them into Medora, throwing them into a garage for the evening. The next day he unrolled the other hide and examined it. Whoever killed the animal evidently had not intended to keep the hide, it had been frozen and thawed and refrozen so that it smelled. From the length and texture of the hair he could tell that the animal had been killed between Christmas and March—probably around about January 1—but was indefinite as to this point. At first he discovered no brand, but upon clipping and scraping the hide the brand, V over L, emerged. He knew it was one of the hides he took from defendant as "There are identifying marks about a hide that you would remember the same as you would remember your wife and not get mixed up on it."

Lars Vanvig testified in effect that the brand V over L was his brand. His home was 16 miles south of Medora and three miles west of his range where he ran his cattle. About Christmas of 1934 he last saw a "short yearling" calf worth "About twenty dollars" and which belonged to him. When he next counted his herd, shortly after the new year, he missed the calf. At the trial in June he identified the hide as being from this calf that he lost as it was the only one of that size and he knew it, not only by the brand, but by other marks.

One Roy Madison was arrested with the defendant, but the case against him was not pushed. Madison, testifying for the state, stated in effect: that on March 30, 1935, the defendant was at Madison's home, some fifteen miles southwest of Fryburg. To pay for bearings for a tractor fan he gave the defendant two hides to sell in Dickinson, one hide with Madison's brand XN from his own animal killed about the middle of January and the other from an unbranded calf. This animal had come to his ranch the previous November and died there and was worth about five dollars. He skinned it and kept the hide in his possession until he delivered it to McKenzie. This hide with the brand V over L was not one that he gave to the defendant. The defendant had been at his (Madison's) ranch on New Year's Day and left the next day alone, shortly after dinner, driving west in an old Durant car that carried no license and travelling on a road that would take him through the Vanvig ranch.

Roger Otto testified in effect: that about 10:30 of January 2 he left the Barnhart ranch afoot, on his way home. En route he noted

the tracks of a car and of two men who apparently had walked away from the car and then returned. A mile and a half farther on, between 2 and 2:30 P. M., and near to the Vanvig house, he came upon an old Durant car that had no license. He heard three shots, the sound coming from the direction of the Vanvig range and about two miles east of his pasture. He saw no one at the car, no one shooting, nor any target.

This is practically all the testimony for the state. No witness saw the defendant in this Durant car found by Otto nor saw the defendant in the vicinity of the Vanvig range. Because it was an old Durant and without a license, it is assumed to be the car which defendant drove from Madison's and therefore, though two miles away, he was shooting this calf. But no one testifies he had a rifle with him on that day nor saw him there.

Defendant was his own witness. He denied ever taking or killing any of Vanvig's stock. He was at Madison's place about New Year's Day and left the next day in an old Durant car that had no license. (No one asked him where he went and he did not tell.) He was at Madison's place another time in winter and helped to butcher an animal that carried Madison's brand (the supposition being that the hide from this animal was one of the two given to him March 30). As he was leaving Madison's place that day, and shortly after dinner, Madison asked him to take two hides to Dickinson and sell them. Two hides were thrown into his car (he was driving a Roosevelt), and these were the only hides in the car. About twenty minutes after, and about seven miles from Madison's place, the deputy sheriff took the two hides given him by Madison. Defendant had a Winchester rifle in his car and a bread knife—not a butcher knife.

According to Vanvig the animal, defendant is charged with stealing, disappeared about January 2d, 1935, as near as Vanvig can fix the date. The deputy sheriff had difficulty in finding a brand on the hide later identified by Vanvig, and it is quite possible Madison may have been mistaken in saying that there was no brand on the calf; but if the animal strayed over to Madison's place and died there in November, then Vanvig was mistaken in saying he saw the animal about Christmas time.

Assuming that the hide in question was from this animal, the state showed by its own witness Madison how and when he got it and how and when McKenzie got it. Hence, one of the state's witnesses is mistaken.

Was the hide which the deputy sheriff examined the next day the hide Madison gave to the defendant? Madison denies it. The defendant may have had a hide cached and switched hides on the way from Madison's ranch to the place where the hides were taken from him. Some one may have switched hides in the garage. But all this is mere inference.

Even if Madison lied as to how and when he got the hide he gave to the defendant or defendant lied in saying it was given him by Madison, there is no proof whatever showing the defendant stole the animal. This is the offense charged. The theory of the state is the possibility that the shots heard by Otto were fired by McKenzie and that he was shooting at this animal on January 2. Whoever was shooting may have been shooting at coyotes. Who knows? The carcass was not located unless Madison skinned the animal. No attempt was made to show that McKenzie ever disposed of meat. It is an inference that he was anywhere near where these shots were fired. There is no proof the value of the animal lost *"exceeded* twenty dollars," and the theory of "recent unexplained possession of stolen property" is too tenuous.

The evidence falls far short of the proof necessary to convict the defendant of larceny either grand or petit. The motion for a new trial should have been granted and the order denying it is reversed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.